(No. 31566.—

Cedar Park Cemetery Association, Inc., Appellant, *vs.* Benjamin O. Cooper, Auditor of Public Accounts, Appellee.

*Opinion filed January 18, 1951.*

LEONARD L. COWAN, of Chicago, for appellant.

IVAN A. ELLIOTT, Attorney General, of Springfield, (WILLIAM C. WINES, RAYMOND S. SARNOW, JAMES C. MURRAY, and ROBERT J. BURDETT, all of Chicago, of counsel,) for appellee.

Mr. JUSTICE CRAMPTON delivered the opinion of the court:

This is an appeal from a judgment of the circuit court of Cook County sustaining an order of the Auditor of Public Accounts holding the appellant cemetery association was subject to his regulatory supervision under the provisions of the Cemetery Care Act. (Ill. Rev. Stat. 1949, chap. 21, pars. 64.1 *et seq.*) The act gives to the Auditor regulatory supervision of the care funds of "privately owned cemeteries" as they have been defined by the legislature in section 2 thereof. Only a construction of a certain part of the act is involved in this appeal which would have been addressed to the Appellate Court had not the legislature provided in section 20 of the act for direct appeal to this court.

The facts are not in dispute, and all of the acts of the appellant in respect to the sale of lots, etc., and the collection of the care funds, together with their subsequent control by appellant and its trustee, have been, and are, free of any taint of fraud or overreaching. Appellant was organized in 1923 as a corporation for pecuniary profit. It owns 93 acres for cemetery purposes, 71 of which are now developed as a cemetery. Sixty acres of the latter are set aside exclusively for members of the Masonic fraternity and the Eastern Star. The remaining 11 acres are set aside for the burial of those persons belonging to the families of the members of the two orders. The remaining 22 acres have been reserved exclusively for members of the fraternity and the Eastern Star. So far, 11,900 individual lots have been sold, 10,800 of which were purchased by members of the two orders; 8600 lots have been put to their intended use, 8210 being in the area reserved for the two orders and only 390 in the area reserved for non-Masonic burials. The appellant, as a matter of policy voluntarily determined, has always restricted sales of lots, etc., and burials therein principally to members of the Masonic fraternity, the Eastern Star, and to those belonging to members' families or related to members. All of the officials and stockholders of appellant are Masons, though no charter provision or bylaw requires stockholders to be such. The appellant is not owned, operated, controlled, or managed by either the Masonic fraternity, the Eastern Star, or by any agency for either of the two.

In section 7 of the act the legislature has confined its application to a "cemetery authority" owning, operating, controlling or managing a "privately operated cemetery," the appellant being a cemetery authority according to the legislative definition thereof in section 2. In the same section a "privately operated cemetery" is defined to be any cemetery other than a fraternal, municipal, or religious cemetery, or a family burial ground. The Auditor con-

cedes that the Masonic fraternity and the Eastern Star are fraternal orders. In section 2 a "fraternal cemetery" is defined to be, "* * * a cemetery owned, operated, controlled, or managed by any fraternal organization or organizations; or a cemetery under the control and supervision of any cemetery authority or any fraternal organization or organizations in which the sale of lots, graves, crypts or niches is restricted principally to members, and members of their families, of such organization or organizations, or auxiliaries thereof."

Inasmuch as the appellant has amassed a cemetery care fund, it will be subject to the regulatory supervision of the Auditor if it does not operate a fraternal cemetery as defined in the act. The sole question presented by this appeal is whether the appellant, as a cemetery authority with a privately owned cemetery, is controlling and supervising it in such manner that the sale of lots, etc., is restricted principally to members of the two orders and members of their families. The Auditor and the circuit court were of the opinion that the phrase "restricted principally" means restricted by law or by corporate charter, and a voluntary or contractual restriction will not suffice as a ground for exemption. The appellant takes the view the language of the act discloses it was the intent of the legislature to exempt from the act privately owned cemeteries conducted as fraternal cemeteries as a matter of a voluntarily assumed policy.

Appellant rightly alleges the act to be in derogation of the common-law rights of privately owned cemetery authorities because it regulates their activities, requires a license, surety bond, imposes supervision, and provides for revocation of the license. A statute will be construed as changing the common law only to the extent the terms thereof warrant, or as necessarily implied from what is expressed. (*Thompson* v. *Weller*, 85 Ill. 197.) It will not be presumed that an innovation was intended beyond what

is specifically or clearly implied. (*Walter* v. *Northern Ins. Co.* 370 Ill. 283.) The act is highly penal, for it fixes a penalty for transgressing its provisions, either by fine, imprisonment, or both. (*Vestal Co.* v. *Robertson,* 277 Ill. 425.) When a statute is penal in its nature, it cannot be extended by intendment or implication to embrace matters beyond its terms. *Wayland* v. *City of Chicago,* 369 Ill. 43.

Some may say the act has its remedial aspects when examined from the standpoint of the evil attacked by the legislature. Even though that be so, it will not warrant construing the act liberally from the standpoint of exclusions and inclusions of persons, for we cannot read into it something which is not within the clearly expressed intent of the legislature. (50 Am. Jur., Statutes, sec. 394.) Where a statute has remedial features and is at the same time in derogation of the common law, it will be strictly construed when determining what persons come within the statute. (50 Am. Jur., Statutes, sec. 405.) Should the statute under examination be remedial and penal, it will be construed with at least a reasonable degree of strictness as to not include anything beyond the immediate scope and object, even though it be within its spirit. This bars adding anything to the statute by inference or intendment. (50 Am. Jur., Statutes, sec. 423.) When the phrase "restricted principally" is studied against the background of the general legislative intent as found from an examination of the whole of the act made under the control of the applicable rules of construction as set forth, we conclude the legislature intended the definition should include privately owned cemeteries that voluntarily and as a matter of policy have, and do restrict their sales of lots, etc., and burials thereon principally to persons who are members of the Masonic fraternity, the Eastern Star, and to members and relations of their families.

The act became a law in 1947, and the appellant had been functioning for about twenty-four years prior to that

time. By reason of the definition of fraternal cemeteries adopted by the legislature, we can safely assume it had in mind privately owned cemeteries conducted in the manner appellant's is conducted, and was of the opinion they should be exempt from the act. The legislature did not say the exemption should be based solely upon some restrictive provision in the charter or bylaws, or that it should be based upon contract between the cemetery and the purchaser of lots. It is the intent of the legislature that exemptions of the character claimed here could be based upon actual facts of consistent performance which unequivocally demonstrate adoption and full implementation of the restriction stated in the definition as a voluntary assumption of policy. Should the appellant, or others similarly circumstanced, deviate from the policy, the exemption would be lost and they would be under the act.

The judgment of the circuit court of Cook County, affirming the order of the Auditor, is reversed.

*Judgment reversed.*